## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

ANTHONY JEFFERSON                                    CIVIL ACTION

VERSUS                                               NO.  06-5277

N. BURL CAIN, WARDEN LOUISIANA                       SECTION "S"(2)
STATE PENITENTIARY


### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

## I.   STATE COURT PROCEDURAL BACKGROUND

The petitioner, Anthony Jefferson, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  Jefferson and his mother, Maxine Mahaffy, were charged by bill of information in Jefferson Parish on July 9, 2002, with theft of U.S. currency valued over $500.[3]  The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> At trial, Carmen Vitrano testified that she generally works at night, and that after work she sometimes goes to a donut shop called "Coffee & . . ." at 2010 Williams Boulevard in Kenner.  At about 3:00 a.m. on May 8, 2002, she went into the shop, ordered a cup of coffee, and asked the cashier, Maxine Mahaffy, for change to use in the video poker machines.  She gave Ms. Mahaffy two hundred dollars in cash, and then went into the restroom.  A donut cutter named Jonas Hall was the only employee in the shop aside from Ms. Mahaffy.
>
> When Ms. Vitrano returned to the serving area, she saw that a male customer known to her as George was now sitting at the counter, asleep.  Jonas Hall's shift had ended, and he had left the shop.  A man was standing at the counter talking to Ms. Mahaffy.  The man told Ms. Mahaffy that he wanted the money bag, saying "If you do as I tell you, nobody will get hurt. I have a gun."  Ms. Vitrano testified that Ms. Mahaffy motioned to her by nodding her head, as if she were attempting to let the man know Ms. Vitrano was there.  The man turned to look at Ms. Vitrano, and she was able to see his face.  Ms. Vitrano testified that she saw the man, later identified as Anthony Jefferson, holding what she believed was a gun, but that it was partially hidden by his hand.
>
> Ms. Mahaffy walked toward the back of the shop, and returned minutes later with a zippered bag.  Ms. Mahaffy opened the bag, removed currency, and placed it in one of the shop's white paper bags.  She gave the bag to the perpetrator and he left

---

[2]Rec. Doc. No. 4.

[3]St. Rec. Vol. 1 of 6, Bill of Information, 7/9/02.  Although the bill of information in the record indicates theft of cash valued over $1,000, the record reflects that the charge for which they were ultimately tried was theft of cash valued over $500.  Louisiana does not recognize a separate category of theft valued over $1,000, and theft valued over $500 appears to be the appropriate designation.  State v. Ramsdell, __ So.2d __, 2006 WL 3798712 at *1 n.2 (La. App. 5th Cir. Dec. 27, 2006).

the shop.  Ms. Vitrano testified that the man did not ask for the money that was in the cash register.  Ms. Vitrano further remarked that Ms. Mahaffy did not appear distressed either during or after the robberies.

Ms. Mahaffy told Ms. Vitrano she had been robbed.  Ms. Vitrano asked Ms. Mahaffy whether she was going to call police. Mahaffy responded, "Well, yeah." Ms. Mahaffy then went to the telephone and began to shake it.  She told Ms. Vitrano it was not working.  Minutes later, when the phone became operable, Ms. Mahaffy telephoned Randal Daigle, the manager of the shop.  Mr. Daigle testified that when he spoke to Ms. Mahaffy on the telephone, he asked whether she had called police. When she said she had not, he told her to do so.

Ms. Vitrano again prompted Ms. Mahaffy to call police.  Instead, Ms. Mahaffy waited on a customer.  Her attitude remained nonchalant, and she did not appear shaken or frightened by the incident.  Ms. Vitrano again insisted that Ms. Mahaffy telephone police.  It was only then that the cashier called 9-1-1.  A cassette tape of Ms. Mahaffy's call to 9-1-1 was admitted in evidence and was played for the jury.

Mr. Daigle testified that he routinely keeps two thousand dollars in a bag inside the shop's safe in order to pay winnings on the shop's video poker machines. The safe also contains another one thousand dollars in cash.  The cashier on duty has access to the safe. Daigle went to the shop after Ms. Mahaffy called him to report the robbery.  He found that the one thousand dollars was still in the box inside the safe, and that there was no money missing from the cash register.  Daigle testified that the shop is equipped with security cameras, but that they were out of service at the time of the offense.

Officer Pat Gallagher of the Kenner Police Department testified that he reported to Coffee & . . . after hearing an alert over the police radio regarding a robbery there.  Gallagher was accompanied by an officer trainee, Louis Frost. Gallagher and Frost supervised the scene. Gallagher testified that he observed Ms. Mahaffy as she waited on customers.  She seemed a bit nervous, but did not appear upset over the incident.

Ms. Mahaffy told Officer Gallagher that the perpetrator was a short black man wearing a black T-shirt and dark-colored pants. She said the perpetrator implied he had a gun, but that she did not see it.  She told the officer that the man asked for the money bag, and that she retrieved it from the back room.  Gallagher asked her how someone would know there was a money bag in the back room.  Ms. Mahaffy responded that she had taken the bag out earlier to pay out some video poker winnings. Gallagher inquired as to whether the perpetrator was at the shop when she took out the bag, and she said he was not.

Ms. Vitrano testified that the perpetrator was a black man who stood 5'8" to 5' 9" tall.  He wore a white T-shirt with writing on it, blue jeans, and a dark-colored cap.  Ms. Vitrano testified that when police officers arrived at the scene, she

attempted to give them information, but they did not seem interested in what she had to say.  She heard Ms. Mahaffy give inaccurate and conflicting accounts of the incident.

On May 20, 2002, Detective Cunningham interviewed Ms. Vitrano at her home.  He presented her with a photographic lineup from which she identified defendant, Anthony Jefferson, as the perpetrator.  She signed the back of Jefferson's photograph, adding the date and time when she made the identification. Cunningham also showed the photographic lineup to Ms. Mahaffy, who told him she could not identify any of the subjects as the man who took the money.  She did not immediately point out to the officer that her son's photograph was included in the lineup.  However, when Cunningham told her that Jefferson had been identified as the robber, Ms. Mahaffy said, "Oh, that's Anthony's picture there."

Detective Cunningham asked Ms. Mahaffy whether she had had anything to do with the incident.  She denied any involvement.  She also told him that her son had been out of town for two months.  Cunningham responded that he had information that defendant had been in the city for four days prior to the interview. Ms. Mahaffy then remembered that her niece had seen defendant on the preceding Sunday.

Based on the information he collected, Detective Cunningham obtained a search warrant for Ms. Mahaffy's residence at 2200 Idaho, Apartment A, in Kenner. He participated in the search of the apartment.  Among the items recovered were a dark-colored baseball cap, a payroll check bearing defendant's name, and a photocopy of Jefferson's Louisiana driver's license.  The address on the license was 2200 Idaho, Apartment A.  Cunningham testified that the apartment is two city blocks away from the donut shop.

In her trial testimony, Ms. Mahaffy denied that either she or her son were involved in the crime.  She testified that, at the time of the incident, Ms. Vitrano was playing video poker, and could not have seen the perpetrator's face from her vantage point.  Ms. Mahaffy further testified that the hat seized at her apartment belongs to her daughter's husband.

Mattie Evans, Ms. Mahaffy's sister, testified that she is a cook at the donut shop.  She went on duty shortly after the offense occurred.  With respect to Ms. Mahaffy's delay in calling police, Ms. Evans testified that the telephone in the shop had not been working properly for two to three weeks leading up to the robbery.  Ms. Evans further testified that she knows Ms. Vitrano as a regular customer at the shop. When police arrived at the shop to investigate the robbery, Ms. Evans heard her tell them that she had not seen the robber's face.

State v. Jefferson, 866 So.2d 931, 934-936 (La. App. 5th Cir. 2004); State Record

Volume 1 of 6, 5th Cir. Opinion, 03-KA-820, January 27, 2004.

Jefferson and Mahaffy were tried by a jury on November 20 and 21, 2002, and both were found guilty as charged.[4]  On December 11, 2002, Mahaffy's counsel filed a motion for new trial based on lack of compulsory process as to the witness known as "Jonas,"[5] and allegedly questionable identification evidence presented at trial.[6]  The state trial court denied the motion at a hearing held on December 12, 2002.[7]  The court thereafter sentenced Mahaffy to three years imprisonment, which was suspended, and placed her on active probation for three years.[8]

That same day, the court sentenced Jefferson to serve eight years at hard labor.[9]  The State also filed a multiple bill against Jefferson.[10]  On January 9, 2003, the state trial

---

[4]St. Rec. Vol. 1 of 6, Trial Minutes (2 pages) (Jefferson), 11/20/02; Trial Minutes (2 pages) (Mahaffy), 11/20/02; Trial Minutes (Jefferson), 11/21/02; Trial Minutes (Mahaffy), 11/21/02; Verdict Form (Mahaffy), 11/21/01; St. Rec. Vol. 3 of 6, Verdict Form (Jefferson), 11/21/02; Trial Transcript (pp.1-204), 11/20/01; St. Rec. Vol. 4 of 6, Trial Transcript (continued) (pp.205-268), 11/20/01; Trial Transcript, 11/21/02.

[5]Later determined to be Jonas Hall.

[6]St. Rec. Vol. 1 of 6, Motion for New Trial (Mahaffy), 12/11/02.

[7]St. Rec. Vol. 1 of 6, Trial Court Order, 12/12/02.

[8]St. Rec. Vol. 1 of 6, Sentencing Minutes (Mahaffy), 12/12/02; Conditions of Probation-Felony (Mahaffy), 12/12/02; St. Rec. Vol. 4 of 6, Sentencing Transcript, 12/12/02.

[9]St. Rec. Vol. 1 of 6, Sentencing Minutes (Jefferson), 12/12/02; St. Rec. Vol. 4 of 6, Sentencing Transcript, 12/12/02.

[10]Id.; St. Rec. Vol. 1 of 6, Multiple Bill, 12/12/02.

court found Jefferson to be a quadruple offender and resentenced him to 35 years in prison without benefit of parole, probation or suspension of sentence.[11]

On appeal to the Louisiana Fifth Circuit Court of Appeal, Jefferson raised seven grounds for relief:[12]  (1) The motion for new trial should have been granted based on suspect identification testimony.  (2) The state trial court erred in denying the motion to suppress based on a stale search warrant.  (3) The state trial court erred in denying the motion for new trial based on the failure to serve the witness subpoena timely.  (4) The state trial court gave non-responsive answers to the jury's questions asked during deliberations.  (5) The multiple offender sentence was excessive.  (6)(a) The trial judge erred by entering the jury room during deliberations; and (b) counsel was ineffective for failing to object to the trial judge's action.  (7) The state trial court erred in sentencing Jefferson as a multiple offender in violation of the Double Jeopardy Clause.

The Louisiana Fifth Circuit affirmed the conviction and sentence on January 27, 2004.[13]   The court found that the first, second and sixth issues were not properly

---

[11]St. Rec. Vol. 1 of 6, Minutes of Multiple Bill Hearing, 1/9/03; Transcript of Multiple Bill Hearing, 1/9/03.

[12]St. Rec. Vol. 3 of 6, Appeal Brief, 2003-KA-0820, 8/1/03; Pro Se Supplemental Brief, 03-KA-820, 8/13/03; Pro Se Supplemental Brief, 10/17/03.

[13]State v. Jefferson, 866 So.2d 931 (La. App. 5th Cir. 2004); St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 03-KA-820, 1/27/04.

preserved for appeal by motion or objection and were deemed waived.  The third issue was found to be without merit because counsel did not seek service of a subpoena prior to trial or make a sufficient effort to secure Jonas Hall for trial.  The court also determined that the unavailability of Jonas Hall as a witness at trial was not prejudicial because his testimony would have been the same as the other witnesses.  The court further determined that the fourth and fifth claims were without merit.  Finally, the court held that the seventh claim had been abandoned because it was not briefed.

Jefferson filed a writ application with the Louisiana Supreme Court in which he raised only four issues:[14]  (1) The motion for a new trial should have been granted based on questionable identification testimony.  (2) The motion for a new trial should have been granted because the process server failed timely to issue the subpoena to Jonas Hall.  (3) The state trial court's answers to the jury's questions during deliberations were non-responsive.  (4) The multiple offender sentence was excessive.

While this writ application was pending, Jefferson filed an application for post-conviction relief with the state trial court on May 7, 2004, seeking an out-of-time appeal on grounds of ineffective assistance of counsel at trial, sentencing and on appeal and the

---

[14]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 04-KO-727, 3/22/04 (postmarked 2/21/04); St. Rec. Vol. 1 of 6, La. S. Ct. Letter, 2004-KO-727, 3/22/04 (postmarked 2/21/04).

State's alleged failure to disclose exculpatory evidence.[15] The state trial court denied the application on May 13, 2004 for lack of jurisdiction because of the pending Supreme Court writ application.[16]

On September 24, 2004, the Louisiana Supreme Court denied Jefferson's writ application without reasons.[17] Jefferson's conviction became final 90 days later, on December 23, 2004, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

About five months later, on June 3, 2005, Jefferson filed an application for post-conviction relief in which he asserted five grounds for relief:[18] (1) ineffective assistance of counsel for failure to object to the trial court's failure to rule prior to trial on the motion to suppress the identification; (2) ineffective assistance of counsel for failure to secure Jonas Hall for trial; (3) ineffective assistance of counsel for failure to object to

---

[15]St. Rec. Vol. 1 of 6, Application for Post Conviction Relief, 5/7/04.

[16]St. Rec. Vol. 1 of 6, Trial Court Order, 5/13/04.

[17]State v. Jefferson, 882 So.2d 1166 (La. 2004); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2004-KO-0727, 9/24/04.

[18]St. Rec. Vol. 2 of 6, Application for Post Conviction Relief, 6/3/05.

insufficient evidence at the multiple offender hearing;  (4) denial of a jury trial at the multiple offender hearing; and (5) ineffective assistance of counsel for failure to object to the denial of his right to a jury trial at the multiple offender hearing.   In his supplemental brief, Jefferson also asserted a sixth claim urging additional arguments in support of his claim that counsel was ineffective for failure to object to the sufficiency of the evidence at the multiple offender hearing and a seventh claim alleging that he was denied the right to testify on his own behalf at trial.[19]  The state trial court denied relief on June 13, 2005, finding no merit to any of his claims.[20]

Jefferson sought review in the Louisiana Fifth Circuit, raising the same seven claims.[21]  The court denied the application on July 29, 2005, finding no error in the trial court's order.[22]  Jefferson's subsequent writ application to the Louisiana Supreme Court was denied without reasons on June 16, 2006.[23]

---

[19]St. Rec. Vol. 2 of 6, Supplemental Brief (undated) (signed May 31, 2005).

[20]St. Rec. Vol. 2 of 6, Trial Court Order, 6/13/05. The court did not specifically address claim No. 5 in its order.

[21]St. Rec. Vol. 5 of 6, 5th Cir. Writ Application, 05-KH-714, 7/18/05 (postmarked 7/12/05).

[22]St. Rec. Vol. 5 of 6, 5th Cir. Order, 05-KH-714, 7/29/05.

[23]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 06-KH-0031, 1/5/06; St Rec. Vol. 2 of 6, La. S. Ct. Letter, 2006-KH-31, 1/5/06 (postmarked 8/12/05); State ex rel. Jefferson v. State, 929 So.2d 1278 (La. 2006); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2006-KH-0031, 6/16/06.

II.    <u>FEDERAL HABEAS PETITION</u>

On October 4, 2006, Jefferson filed a petition for federal habeas corpus relief in which he alleges eleven (11) grounds for relief:[24] (1) The state trial court erred in denying the motion for a new trial based on the identification evidence and the failure to suppress the identification evidence. (2) The trial court erred in denying the motion for a new trial based on the failure to serve the subpoena on Jonas Hall. (3) The trial court gave an improper jury instruction when answering the jury's question during deliberations. (4) The sentence was excessive. (5) Counsel was ineffective for failure to object to the trial court's failure to rule before trial on the motion to suppress the identification evidence. (6) Counsel was ineffective for failure to find and secure defense witnesses.  (7) Counsel was ineffective for failure to object to allegedly insufficient evidence at the multiple bill hearing. (8) He was denied a jury at the multiple bill hearing. (9) Counsel was ineffective for failure to object to the denial of the right to a jury at the multiple bill hearing.  (10) Counsel was ineffective for failure to object to allegedly insufficient evidence at the multiple bill hearing.  (11) He was denied the right to testify on his own behalf.

The State filed a response in opposition to the petition alleging that Jefferson has failed to exhaust state court remedies as to the eleventh claim.  Alternatively, the State

---

[24]Rec. Doc. No. 3 (supplemented by Rec. Doc. No. 9).

argues that Jefferson's first claim is in procedural default and that he has failed adequately to brief any of the claims to show his entitlement to federal review.

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[25] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Jefferson's petition, which, for reasons discussed below, is deemed filed in a federal court on July 31, 2006.[26]

_____

[25]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[26]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Jefferson's petition was filed by the clerk of court on October 4, 2006.  Jefferson dated his signature on the petition on July 31, 2006. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that Jefferson's federal petition is timely filed.  The State alleges, however, that Jefferson has failed to exhaust state court remedies regarding the eleventh claim raised in this federal petition and that one claim is in procedural default.

The record shows that Jefferson raised his eleventh claim to the state trial court in a supplement brief in support of his application for post-conviction relief.[27]  He alleged that his counsel was ineffective for advising him not testify and thereby denied him the right to testify. The state trial court did not recognize or address either of the supplemental claims raised in that pleading.  The United States Fifth Circuit Court of Appeals has stated:

> Indeed, "it is too obvious to merit extended discussion that whether the exhaustion requirement of 28 U.S.C. § 2254(b) has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in the petitioner's brief in the state court."

---

[27]St. Rec. Vol. 2 of 6, Supplemental Brief (undated) (signed May 31, 2005).

12

Houston v. Estelle, 569 F.2d 372, 375 (5th Cir. 1978); Lenza v. Wyrick, 665 F.2d 804, 807 (8th Cir. 1981).  Houston, 569 F.2d at 375 (quoting Smith v. Digmon, 434 U.S. 332 (1978) (per curiam)).  Instead, "it is necessary to examine the petitioner's brief in the state court."  Id. (citations omitted); Lenza, 665 F.2d at 808.

Having done so, it is clear that Jefferson raised the claim in the state trial court and proceeded to seek review in the Louisiana Fifth Circuit and the Louisiana Supreme Court.  The state trial court's failure specifically to address the claim does not render it unexhausted.  The State's defense that Jefferson failed to exhaust must be rejected.

The State also alleges that one of Jefferson's claims is in procedural default and that he has failed to demonstrate through briefing that his remaining claims are worthy of federal review.  The State bases this argument on the fact that Jefferson failed to brief the eleven issues raised and did not attach or refer to his state court pleadings. Nevertheless, the claims raised are identical to those raised in the state courts and, broadly construed, are sufficient for this court to address based on the record as a whole.

IV.   PROCEDURAL DEFAULT OF CLAIM NO. ONE

Jefferson's first claim alleges that the state trial court erred in denying the motion for a new trial based on the identification evidence and the failure to suppress illegally confiscated evidence.  He raised this claim on direct appeal.  The Louisiana Fifth Circuit denied relief, finding that the claim was waived because the issue was not raised in the

13

motion for new trial and because he failed to brief the issue or challenge the sufficiency of the identification evidence.[28]  This procedural denial was the last reasoned decision on the issue.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the

---

[28]State v. Jefferson, 866 So.2d at 937; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 03-KA-820, p. 8, 1/27/04.

merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion. <u>Ylst</u>, 501 U.S. at 802.

A.    <u>INDEPENDENT AND ADEQUATE</u>

The Louisiana Fifth Circuit denied relief on Jefferson's claim because the claim was waived or not preserved for appeal. The stated basis for this reasoning is La. Code Crim. P. art. 852, which requires that a motion for new trial contain the grounds on which it is based. For the state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.

A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. <u>Amos</u>, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. <u>Glover</u>, 128 F.3d at 902.

La. Code Crim. P. art 852 is an independent state law procedural basis for denying review of an improperly raised claim. The state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. <u>Glover</u>, 128 F.3d at 902. The state court in this case expressly ruled that Jefferson was not entitled to relief on this claim because it was not raised in the motion for new trial or preserved for appeal. This standard is consistently relied upon by Louisiana

15

courts when refusing to consider improperly raised claims.  See e.g., State v. Laymon, 756 So.2d 1160 (La. App. 4th Cir. 2000) (claim not raised in motion for new trial would not be considered on appeal); State v. McGee, 894 So.2d 398, 413 n.3 (La. App. 5th Cir. 2005) (basis for motion for new trial must be stated with specificity).

I find, therefore, that the bar imposed by the state court was both independent and adequate to bar federal review of Jefferson's claim in this court asserting that the trial court erred in denying the motion for a new trial based on identification testimony and the failure to suppress other evidence.

B.   CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  Glover, 128 F.3d at 902 (citing Coleman, 501 U.S. at 731-32); Amos, 61 F.3d at 338-39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed

to raise the claim despite recognizing it, does not constitute cause for a procedural default.  Id. at 486.

In this case, Jefferson has not offered any cause for the default that would excuse the procedural bar imposed by the Louisiana courts.  My review of the record does not support a finding that any factor external to the defense prevented Jefferson from raising this claim in a procedurally proper manner.  The record also does not reflect any action or inaction by the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  Hogue, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Jefferson's claim that the trial court erred in admitting the evidence is therefore procedurally barred from review by this federal habeas corpus court.  See Trest v. Whitley, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural

rule concerning time restriction on filing for state post-conviction relief), <u>vacated on other grounds</u>, 522 U.S. 87 (1998).[29]

## C.    FUNDAMENTAL MISCARRIAGE OF JUSTICE

Jefferson may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  <u>Hogue</u>, 131 F.3d at 497 (citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 (1986); <u>accord</u> <u>Murray</u>, 477 U.S. at 496; <u>Glover</u>, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  <u>Campos v. Johnson</u>, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); <u>Nobles</u>, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")  When the petitioner has not adequately asserted his actual innocence, his

---

[29]The Supreme Court vacated the Fifth Circuit's opinion, but only on grounds that a court of appeals is not <u>required</u> to raise the procedural default argument sua sponte. <u>Id</u>.

procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  Glover, 128 F.3d at 903.

Jefferson does not present and the record contains nothing that suggests his actual innocence.  On the contrary, the evidence of his guilt is substantial.  His claims address alleged failings in the underlying criminal proceedings and not his actual innocence.  He presents no new evidence or argument of innocence that was not already presented to and resolved by the jury and the state trial court.  For these reasons, Jefferson has failed to overcome the procedural bar to this claim.  Thus, the claim that the state trial court erred in admitting evidence is procedurally barred and must be dismissed with prejudice for that reason.

## V.   STANDARDS OF A MERITS REVIEW OF THE REMAINING CLAIMS

Jefferson has presented ten (10) other claims which are not in procedural default and must be considered on the merits.  As to these claims, amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (brackets in original); <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert. denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25); <u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

A.    <u>DENIAL OF MOTION FOR NEW TRIAL BASED ON FAILURE TO SERVE THE SUBPOENA (CLAIM NO. TWO)</u>

Jefferson alleges that he was denied compulsory process when a subpoena was not timely served upon the witness Jonas Hall.  He raised this claim on direct appeal to the Louisiana Fifth Circuit.  The court held that counsel for both defendants "were remiss in failing to request a subpoena for Mr. Hall in advance of trial.  The defendant also failed to make the minimal effort it would have taken to obtain the witness' last name."[30]  The court also noted that counsel could have moved for a continuance of the trial or a recess

---

[30]<u>State v. Jefferson</u>, 866 So.2d at 939; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 03-KA-820, p. 13, 1/27/04.

to search for Hall, or proffered Hall's expected testimony.  The court resolved that there was no denial of the right to compulsory process.  The court further held that the absence of Hall was not prejudicial since "[h]is testimony would have been duplicative of Ms. Evans' and Ms. Mahaffy's testimony that Ms. Vitrano said she had not seen the perpetrator's face."

The compulsory process clause of the Sixth Amendment gives a defendant the right to obtain favorable testimony from witnesses, and this right applies to the states through the due process clause of the Fourteenth Amendment.  Washington v. Texas, 388 U.S. 14, 19 (1967).  The Supreme Court, however, has not fully resolved the guarantees afforded by the Compulsory Process Clause:

> Because the applicability of the Sixth Amendment to this type of case is unsettled, and because our Fourteenth Amendment precedents addressing the fundamental fairness of trials establish a clear framework for review, we adopt a due process analysis for purposes of this case.  Although we conclude that compulsory process provides no greater protections in this area than those afforded by due process, we need not decide today whether and how the guarantees of the Compulsory Process Clause differ from those of the Fourteenth Amendment.

Pennsylvania v. Ritchie, 480 U.S. 39, 56 (1987) (emphasis in original).

Thus, while the Sixth Amendment guarantees a defendant the right to compulsory process, the right is not absolute.  United States v. Gonzales, 79 F.3d 413, 424 (5th Cir. 1996).  "The Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him

'compulsory process for obtaining <u>witnesses in his favor</u>.'" (emphasis in original) <u>United States v. Valenzuela-Bernal</u>, 458 U.S. 858, 867 (1982) (quoting U.S. Const. amend. VI). Therefore, the defendant must "at least make some plausible showing of how [the witness's] testimony would have been both material and favorable to his defense." <u>Id.</u>, 458 U.S. at 867; <u>U.S. v. Redd</u>, 355 F.3d 866, 878 (5th Cir. 2003); <u>Janecka v. Cockrell</u>, 301 F.3d 316, 326 (5th Cir. 2002). Thus, "[w]hen requesting a court to subpoena a witness, a defendant . . . has the duty to demonstrate the necessity of the witness's testimony." <u>Gonzales</u>, 79 F.3d at 424.

The record demonstrates that counsel filed a subpoena list on the day of trial on which "Jonas" with no last name was listed as a witness with two addresses.[31] After the jury was selected, defense counsel sought and obtained Jonas's last name from the prosecutor at trial.[32] The proprietor of the store, Randy Daigle, called Hall in an effort to get him to come to trial.[33] Hall was unavailable at the time.[34] Counsel also claims to have spoken with Jonas Hall on the phone and advised him that he was needed for trial.[35]

---

[31]St. Rec. Vol. 4 of 6, Sentencing Transcript, p. 4, 12/12/02; St. Rec. Vol. 2 of 6, Trial Transcript, p. 7, 11/20/02.

[32]St. Rec. Vol. 4 of 6, Sentencing Transcript, p. 4, 12/12/02.

[33]St. Rec. Vol. 2 of 6, Trial Transcript, p. 9, 11/20/02.

[34]St. Rec. Vol. 4 of 6, Sentencing Transcript, p. 4, 12/12/02.

[35]<u>Id</u>. at p. 5.

23

Counsel provided the process server with Jonas's last name.[36]  The process server, however, would only rely on the paperwork already provided.[37]  The subpoena was never delivered and Hall never appeared for trial.[38]

Counsel filed an affidavit from Jonas Hall with the motion for a new trial in an effort to demonstrate the importance of his testimony.[39]  Hall attested as follows:

> That he is employed at the Coffee & O's donut shop.
> That on May 8, 2002, Maxine Mahaffy, a cashier, advised him that she had been robbed;
> That he saw Ms. Carmen Vitrano playing video poker when I returned after the robbery.  I heard Ms. Vitrano state that she did not see the face of the robber.
> Further, that Carmen Vitrano could not have seen the face of the perpetrator of the robbery from her location in the coffee shop.  I saw her come out of the video poker room after the robbery.
> Further, he would have testified to all of the above and had he been called to the witness stand.

The allegation before this court is that Hall's testimony was material and favorable to challenge the credibility of Carmen Vitrano's testimony.  In other words, Jefferson alleges that Hall's testimony was crucial to challenge the credibility of Vitrano's testimony and to show that Vitrano could not have seen the robbery occur or the perpetrator's face.

---

[36]Id.

[37]Id.

[38]Id.

[39]Id. at p. 6; St. Rec. Vol. 1 of 6, Motion for New Trial, 12/11/02.

Even assuming that Jefferson could establish both materiality and favorableness through Hall's affidavit, the absence of Hall's testimony from the trial was harmless as determined by the state courts. See Crane v. Kentucky, 476 U.S. 683, 689 (1986) (stating that compulsory process violations are subject to harmless-error review). The harmless error standard used by the state trial court was in accord with the standard set forth by the United States Supreme Court in Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993). In Brecht, the Supreme Court held that a trial error occurring during the presentation of the case to the jury is subject to harmless error analysis because it can be quantitatively assessed in the context of other evidence presented to determine the effect it had on the trial. Brecht, 507 U.S. at 629-30; Johnson v. Cain, 215 F.3d 489, 495 (5th Cir. 2000); Laboa v. Calderon, 224 F.3d 972, 977 (9th Cir. 2000); Lowery v. Anderson, 225 F.3d 833, 841 (7th Cir. 2000), cert. denied, 532 U.S. 959 (2001).

In making the assessment, the reviewing court must determine whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637; Robertson v. Cain, 2003 WL 734155, slip op. at *1 (5th Cir. March 5, 2003). The petitioner may prevail in a federal habeas corpus proceeding only if there is grave doubt as to the harmlessness of the error. O'Neal v. McAninch, 513 U.S. 432, 436 (1995). According to the United States Fifth Circuit Court of Appeals, "if our minds are 'in virtual equipoise as to the harmlessness' under the Brecht standard of the error, then we must conclude that it was harmful." Robertson, 2003 WL 734155 at *6

(quoting <u>Woods v. Johnson</u>, 75 F.3d 1017, 1026-27 (5th Cir. 1996) (quoting <u>O'Neal</u>, 513 U.S. at 435)).

The record reflects that the prosecution presented evidence and testimony to establish that, at a time when Mahaffy would be the only employee working, her son, Anthony Jefferson, entered the donut shop and requested the money under the guise of an armed robbery. Carmen Vitrano was apparently the only eyewitness who testified at trial for the prosecution.[40] She testified that, when she arrived at the donut shop, there was no one there but the cashier or waitress and the donut cutter.[41] She handed the waitress $200 to get change to play video poker.[42] She then went to the restroom.[43] When she exited the restroom, there was a man she knew as George sitting at the counter with his head down.[44] She then looked at the waitress to get her change and she saw another man standing at the counter.[45] By this time, the donut cutter was gone.[46] The man at the counter was talking with the waitress. When the waitress saw Vitrano approaching, she motioned her head as if to notify the man that someone was nearby.

---

[40]St. Rec. Vol. 3 of 6, Trial Transcript (continued), p.14, 11/20/02.

[41]<u>Id</u>. at pp. 14, 15.

[42]<u>Id</u>. at pp. 14-15, 34.

[43]<u>Id</u>. at pp. 15-16.

[44]<u>Id</u>. at p. 16.

[45]<u>Id</u>. at pp. 16-17.

[46]<u>Id</u>. at p. 17.

The man looked her way and she got a good look at his face.[47]  Vitrano then heard the man say that he had a gun, he wanted the money and if she gave it to him, no one would get hurt.[48]  The cashier then went to the back and came out with a zipper bag.[49]  She took the money out of the bag, put it in a white paper bag, and the man left with it.

After the man left, the cashier announced that she had been robbed and then stood by nonchalantly.[50]  Vitrano asked her if she was going to call the police.[51]  The cashier said "yes," but then was unable to get a dial tone.  She eventually got the phone working and called the owner instead of the police.  After she hung up with the owner, the cashier waited on another person who had arrived.[52]  Vitrano became frustrated and asked again if the cashier was going to call the police.  The cashier eventually called 911.[53]  Vitrano

---

[47]Id. at p. 18.

[48]Id. at p. 17-18.

[49]Id. at p. 18.

[50]Id. at pp. 20-21.

[51]Id. at p. 21.

[52]Id. at p. 22.

[53]Id. at p. 23.

later had two follow-up interviews with Kenner police.[54]  During one interview, she identified defendant Anthony Jefferson's picture from a photographic line-up.[55]

The jury heard the testimony of Mattie Evans, who is the sister of Maxine Mahaffy and who also worked at the donut shop.  Evans testified that she and Hall had returned to the donut shop just seconds after the robbery and before Mahaffy had a chance to call the police.[56]  She also testified that she heard Vitrano tell the police that she did not get a look at the face of the robber.[57]  She also testified that she was unaware that Vitrano later gave police a recorded, complete statement regarding the events that took place.[58]

The jury also heard the testimony of Maxine Mahaffy.[59]  Mahaffy testified that when Jonas left to pick up her sister, she was in the restaurant with two customers, Vitrano and a man at the counter.[60]  She stated that she poured someone a cup of coffee and when she turned back around, there was a man standing near the register.[61]  When she asked if she could help him, he told her to give him the money out of the money

---

[54]Id. at p. 25.

[55]Id. at p. 26.

[56]Id. at p. 203.

[57]St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 205, 11/20/02.

[58]Id. at pp. 206-07.

[59]Id. at p. 212.

[60]Id.

[61]Id.

bag.[62] He repeated his request and told her that he had a gun. She retrieved the bag and put the money in a paper bag as he requested.[63] She testified that she immediately turned around to call 911 but could not get a dial tone.[64] She then yelled out that she had been robbed. She further testified that she had to yell it a few times because Vitrano was playing on the poker machines and was not paying attention.[65] The man at the counter also said he did not notice anything because he was watching Vitrano's legs under the door to the poker machine area. Mahaffy also testified that it was not until she yelled that Vitrano came out of the poker machine room. She stated that Vitrano told her she saw in the mirror that someone came in to or left the shop.[66]

Mahaffy went on to testify that she called 911 first and then called her boss.[67] She testified that when Jonas and her sister arrived, Jonas asked her if she had called her boss. She had not, but she had already called the police before Jonas and Mattie arrived.[68] Mahaffy denied that either she or her son were involved in the robbery.

---

[62]Id. at pp. 212-13.

[63]Id. at p. 213.

[64]Id. at p. 213-14.

[65]Id. at p. 214.

[66]Id. at pp. 214-15.

[67]Id. at pp. 215-16.

[68]Id. at p. 216.

As was concluded by the state appellate court, the jury had before it evidence from both Evans and Mahaffy, which was similar to the anticipated testimony of Hall (as reflected in his affidavit) and, if believed, tended to contradict the testimony of Vitrano. Thus, even without Hall's testimony, the jury had before it testimony by which to assess the credibility of Vitrano.

In addition, both the testimony of Evans and the anticipated testimony of Hall are in conflict with that of Mahaffy. For example, Evans testified that Mahaffy had not yet called police when they arrived at the shop. Mahaffy testified that she had already called 911 when Evans and Hall arrived at the donut shop. Mahaffy also testified that when she cried out that she had been robbed, Vitrano came out of the poker machine area to see what happened and, shortly afterwards, Evans and Hall returned to the store. Evans testified, as would Hall, that Vitrano was in the poker machine area when they returned to the store.

The jury had before it more than sufficient testimony and other evidence by which to assess the credibility of Vitrano's version of the story. As determined by the state court, Hall's testimony would have been duplicative of that already presented to the jury. Thus, the failure to have Hall testify at trial was harmless. There was no substantial or injurious effect or influence on the verdict reached and therefore no substantial showing of the denial of the right to compulsory process. Janecka, 301 F.3d at 327.

30

The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, Supreme Court precedent. Jefferson's claim is in this regard without merit.

B.   IMPROPER JURY INSTRUCTION (CLAIM NO. THREE)

Jefferson alleges that the trial court gave an improper jury instruction when the jury asked for the definition of reasonable doubt during deliberations. This claim was raised on direct appeal. Even there, Jefferson did not specify which part of the definition he challenged. The Louisiana Fifth Circuit denied relief and determined that both the original charge and the supplemental charge tracked the language approved by the Louisiana Supreme Court and other judicial reference manuals.

To establish a constitutional error arising from the language of a jury charge, a petitioner must prove that the instructions, when read as a whole, relieved the State of its burden to prove each element of the crime beyond a reasonable doubt in violation of the principles set forth in In re Winship, 397 U.S. 358 (1970). See Francis v. Franklin, 471 U.S. 307 (1985). If the charge amounts to error, the Supreme Court also has held that the error is subject to a harmless error analysis. California v. Roy, 519 U.S. 2 (1996). In Roy, the Supreme Court concluded that Brecht v. Abrahamson, 507 U.S. at 619, articulates the appropriate standard for determining whether a trial error was harmless in a federal habeas challenge to the use of a jury charge. Roy, 519 U.S. at 6 (citing O'Neal v. McAninch, 513 U.S. 432, 436 (1995)). As discussed above, a federal habeas court

31

may not grant relief on trial errors unless the petitioner demonstrates that there is a reasonable likelihood that the error "had a substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637-38; O'Neal, 513 U.S. at 436.

Prior to its decision in Brecht, the Supreme Court considered the standard of review applicable to jury charge challenges in Estelle v. McGuire, 502 U.S. 62, 72-73 (1991). In Estelle, the Court held that the "reasonable likelihood" standard applies to jury charge error. In doing so, the Court specifically disapproved of the "could have" or "would have" standard previously employed in Cage v. Louisiana, 498 U.S. 39 (1990) and Yates v. Evatt, 500 U.S. 391 (1991). Estelle, 502 U.S. at 71 n.4 (reaffirming Boyde v. California, 494 U.S. 370, 380 (1990)). Therefore, this court, on habeas review, is required first to determine whether the instructions given at trial amounted to constitutional error, and if so, whether the error was harmless. The burden of proof is on the petitioner to prove the error and the constitutional violation. Cupp v. Naughten, 414 U.S. 141, 146 (1973). Jefferson has failed to meet this burden.

The Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Victor v. Nebraska, 511 U.S. 1, 5-6 (1994) (citing Hopt v. Utah, 120 U.S. 430, 440-441 (1887)). The due process standard also does not require the use of any specific wording or formulation; all that is required is that the jury be instructed to find the defendant's guilt beyond a reasonable doubt. Id., 511 U.S. at 5.

At Jefferson's trial, the state trial court instructed the jury simply that "[a] reasonable doubt is a doubt based upon reason and common sense."[69]   During deliberations, the jury asked the court to define reasonable doubt.[70]  The judge read the following statement to the jury:

> As I instructed you earlier, I said that what we mean by reasonable doubt is a doubt which is based upon reason and common sense.  To elaborate on that definition, the law goes on to state: "While the State must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt.  A reasonable doubt is a doubt based upon reason and common sense and is present when, after you have carefully considered all the evidence, you cannot say that you are firmly convinced of the truth of the charge."  Again, I will read that again.  "While the State must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt.  Reasonable doubt is doubt based on reason and common sense and is present when after you have carefully considered all the evidence you cannot say that you are firmly convinced of the truth of the charge."

Mahaffy's counsel objected to the second charge on grounds that it was incomplete and denigrated the standard of proof and moved for a mistrial.  The state trial court denied the motion.

The charges given by the state trial court do not employ any of the problematic phraseology previously addressed by the Supreme Court, such as "moral certainty," "grave uncertainty" or "actual and substantial doubt."  Cage, 498 U.S. at 39.  In fact, the United States Supreme Court has long recognized that "[a] 'reasonable doubt,' at a

---

[69]St. Rec. Vol. 5 of 6, Transcript of Jury Instructions, p. 3, 11/21/02.

[70]St. Rec. Vol. 4 of 6, Trial Transcript, p. 7, 11/21/02.

minimum, is one based upon 'reason.'" <u>Victor</u>, 511 U.S. at 17 (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 317 (1979)).  Thus, the use of such language to define reasonable doubt is not contrary to federal law.  <u>Fields v. Cain</u>, 2007 WL 458208 (E.D. La. Feb. 8, 2007) (Lemmon, J.) (addressing an almost identical jury charge);  <u>see</u> <u>United States v. Alanzo</u>, 681 F.2d 997, 1002 (5th Cir. 1982) (defining reasonable doubt as "doubt based upon reason and common sense").  Jefferson has not established that the charge given by the state trial court was unconstitutional.

The state courts' denial of relief on this claim was neither contrary to nor an unreasonable application of Supreme Court precedent.  Jefferson is not entitled to relief on this claim.

C.    <u>EXCESSIVE SENTENCE (CLAIM NO. FOUR)</u>

Jefferson alleges that his sentence of 35 years in prison as a quadruple offender is excessive.  Jefferson raised this issue on direct appeal.  The Louisiana Fifth Circuit held that the sentence was at the lower end of the sentencing range and was supported by the record.

Federal courts accord broad discretion to a state trial court's sentencing decision which falls within the statutory limits.  <u>Haynes v. Butler</u>, 825 F. 2d 921, 923-24 (5th Cir. 1987); <u>Turner v. Cain</u>, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence).  If a sentence is within the

34

statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense.  Harmelin v. Michigan, 501 U.S. 957 (1991); Solem v. Helm, 463 U.S. 277 (1983).

"[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions.  Smallwood v. Johnson, 73 F.3d 1343, 1346-47 (5th Cir. 1996);  McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).  When a habeas petitioner has been sentenced under a habitual offender statute, a federal court must consider "the seriousness of his most recent offense, not as it stands alone, but in the light of his prior offenses."  McGruder, 954 F. 2d at 316.

Jefferson was convicted of theft of cash valued over $500.  Under Louisiana law, the crime carried with it a sentencing range of imprisonment, with or without hard labor, for not more than ten years, or a fine of not more than $3,000, or both.  La. Rev. Stat. Ann. § 14:67(B)(1).  The state trial court also determined that Jefferson was a fourth offender, and Jefferson does not challenge that finding.  At the time of Jefferson's conviction, La. Rev. Stat. Ann. § 15:529.1 provided in relevant part the following sentencing scheme relative to a fourth felony offender like Jefferson:

A.(1)Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the

Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:

**. . .**

(c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:

(i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term <u>not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life</u>; **. . .**

(emphasis added).

Reading these sentencing provisions together, as a habitual offender Jefferson was facing a sentence of 20 years to life imprisonment. The 35-year sentence was well within this range. This court must now consider proportionality.

The United States Supreme Court has stated that "the Eighth Amendment does not require strict proportionality between crime and sentence. Instead, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." <u>Ewing v. California</u>, 528 U.S. 11, 23 (2003) (<u>quoting</u> <u>Harmelin</u>, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality. <u>Id</u>., 538 U.S. at 30. As noted above,

that disproportionality is judged by whether similar sentences have been imposed for the same offense.  Smallwood, 73 F.3d at 1346-47.

My research has uncovered very few reported Louisiana decisions in which a defendant was convicted of theft over $500 and sentenced as a fourth offender.  The few cases I have located, however, do not demonstrate that Jefferson's sentence was grossly disproportionate.  State v. Yrle, 916 So.2d 1197 (La. App. 5th Cir. 2005) (20 years); State v. Walter, 615 So.2d 1023 (La. App. 1st Cir. 1993) (30 years);  State v. Girod, 892 So.2d 646 (La. App. 5th Cir. 2004) (35 years for fourth offender for possession of stolen things valued over $500).

For the reasons discussed above, I do not find that Jefferson's sentence was unconstitutionally excessive under federal law.  The denial of relief on this issue was not contrary to, or an unreasonable application of, established Supreme Court precedent.  This claim is without merit.

D.   JURY TRIAL IN MULTIPLE OFFENDER PROCEEDING (CLAIM NO. EIGHT)

Jefferson claims that he was denied the constitutional right to a jury trial during the multiple offender proceeding.  On post-conviction review, the state trial court denied relief, finding that there was no established constitutional right under the United States Supreme Court cases of Blakely v. Washington, 542 U.S. 296 (2004), or Apprendi v.

New Jersey, 530 U.S. 480 (2000).  This was the last state court reasoned decision on this issue.

In Apprendi, the Supreme Court held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490.  The Court reiterated this rule in Blakely and U.S. v. Booker, recognizing an exception to the Apprendi rule for prior convictions and habitual offender adjudications. Accord Williams v. Terrell, 2006 WL 1751059 (W.D. La. May 2, 2006) (discussing the holdings and non-retroactivity of these cases).

Thus, there was no constitutional requirement that Jefferson have a jury during the multiple offender proceedings.  The state courts' denial of relief was not contrary to, or an unreasonable application of, Supreme Court precedent.  Jefferson's claim is without merit.

E.   INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NOS. FIVE, SIX, SEVEN, NINE, TEN AND ELEVEN)

Jefferson's remaining claims all allege instances of ineffective assistance by his trial counsel.  He alleges that counsel was ineffective for failure (a) to object to the trial court's failure to rule on the motion to suppress the identification evidence, (b) to secure Jonas Hall's presence at trial, (c) to object to insufficient evidence at the multiple bill hearing, (d) to object to the denial of a jury at the multiple bill hearing and the denial of

the right to testify at trial. These claims were raised on post-conviction. The state trial court denied relief on all of the claims, except the denial of a jury and denial of the right to testify, finding that the claims related to counsel's trial tactics and that counsel's performance was not deficient or prejudicial under Strickland v. Washington, 466 U.S. 668 (1984). The remaining two issues were not mentioned in the court's opinion, which was the last reasoned decision.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994). Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the Supreme Court in Strickland, 466 U.S. at 668, which the state trial court cited and applied. In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  <u>Kimler</u>, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  It is not enough, however, under <u>Strickland</u> 'that the errors had some conceivable effect on the outcome of the proceeding.'"  <u>Motley</u>, 18 F.3d at 1226 (quoting <u>Strickland</u>, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999) (citing <u>Strickland</u>, 466 U.S. at 689-90).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  <u>Strickland</u>, 466 U.S. at 689; <u>Neal</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227 F.3d 273, 282-83 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1167 (2001).  "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was

40

unreasonable in the harsh light of hindsight." <u>Bell</u>, 535 U.S. at 697 (citing <u>Strickland</u>, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. <u>Lamb v. Johnson</u>, 179 F.3d 352, 358 (5th Cir. 1999), <u>cert. denied</u>, 528 U.S. 1013 (1999) (citing <u>Rector v. Johnson</u>, 120 F.3d 551, 564 (5th Cir. 1997) and <u>Mann v. Scott</u>, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. <u>Strickland</u>, 466 U.S. at 689; <u>Moore</u>, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was unreasonable. <u>Strickland</u>, 466 U.S. at 689.

(1)   <u>FAILURE TO OBJECT TO THE TRIAL COURT'S FAILURE TO RULE ON THE MOTION TO SUPPRESS THE IDENTIFICATION EVIDENCE</u>

Jefferson claims that his counsel was ineffective for failure to object when the trial court did not rule before trial on the motion to suppress the identification testimony. The record reflects that Jefferson's counsel did not file the motion to suppress. It was filed

by Mahaffy's counsel.[71]  Nevertheless, in addressing a related claim on direct appeal, the Louisiana Fifth Circuit determined that the motion was presumed applicable to Jefferson under La. Code Crim. P. art. 842.[72]

The record further reflects that the state trial court held a hearing on the motion to suppress on November 14, 2002.[73]  The prosecutor moved for a continuance on the motion as to the identification because the officer failed to bring the pictures with him.[74]  The state trial court allowed testimony as to the motion and instructed the prosecutor to "[j]ust show the picture to defense counsel to make sure there is no suggestibility or anything like that with the picture."[75]  The court deferred ruling on the motion until the pictures were presented.[76]

Prior to the start of trial, the prosecutor tendered the pictures into evidence and asked the court for a ruling.[77]  The court instructed "[t]hat was just to show Mr. Jefferson's counsel.  Let Ms. Guste see that."  The court did not make a ruling on the record.

_____

[71]St. Rec. Vol. 1 of 6, Motion to Suppress (undated).

[72]State v. Jefferson, 866 So.2d at 931; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 03-KA-820, 1/27/04.

[73]St. Rec. Vol. 1 of 6, Minutes of Motion Hearing, 11/14/02.

[74]St. Rec. Vol. 3 of 6, Transcript of Motion to Suppress, p. 3, 11/14/02.

[75]Id.

[76]Id. at p. 9.

[77]St. Rec. Vol. 3 of 6, Trial Transcript, p. 5, 11/20/02.

On direct appeal, the Louisiana Fifth Circuit noted that the failure to request a ruling prior to trial acted as a waiver of the motion.[78]  It appears from the record that the trial court heard testimony on the motion, counsel had the opportunity to question the State's witnesses regarding the identification process and had an opportunity to view the pictures to determine whether there was any "suggestibility" before trial.  Counsel had a further opportunity at trial to question the officer and the eyewitness about the identification process through photographic lineup.

Thus, even if counsel failed to ask for a ruling on the record, it appears that counsel had full opportunity to consider the merit, or lack thereof, of the motion before apparently "waiving" a ruling.  Counsel's decision not to pursue the motion further after taking testimony and viewing the photographs must be attributed to her trial strategy or tactical decision.

Furthermore, counsel had a full opportunity to question the investigating officer and witnesses in an effort to raise questions as to the reliability of the identification made by Vitrano.  The absence of an express ruling on the pretrial motion was not prejudicial to the defense's ability to challenge the reliability of that process.

Jefferson has not shown any prejudice resulting from the absence of an express ruling on the motion.  Without this, Jefferson has not established that counsel rendered

---

[78]State v. Jefferson, 866 So.2d at 931; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 03-KA-820, 1/27/04.

ineffective assistance in this regard.  The denial of relief by the state courts was not contrary to, or an unreasonable application of, Supreme Court precedent.  Jefferson's claim is without merit.

(2)      FAILURE TO SECURE JONAS HALL'S PRESENCE AT TRIAL

Jefferson alleges that his counsel was ineffective for failing to secure Jonas Hall's presence at trial.  As discussed above with regard to Jefferson's compulsory process claim, Mahaffy's counsel, apparently joined by Jefferson's counsel, attempted repeatedly at trial to get service of a subpoena on Hall.  Counsel was, however, unsuccessful in his efforts and Hall never appeared to testify.

As a general rule, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"  Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)).  Thus, where the only evidence of an uncalled witness's testimony comes from the defendant, federal courts are reluctant to find ineffective assistance on habeas review.  Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir. 1985).

In this case, as outlined more fully above, defense counsel had a subpoena issued to Jonas, with no last name, on the day of trial.  The state courts concluded that defense counsel did not attempt to get the last name from the State until the morning of trial.  The process server was unable to make service based on the information provided.  According

44

to the various transcripts, although Hall was apparently told to report to testify either by
Mahaffy's counsel or the victim, Hall was apparently confused as to his instructions and
never appeared.

Mahaffy's counsel nevertheless submitted an affidavit from Jonas Hall with the
motion for a new trial.  As discussed above, counsel had hoped that Hall's testimony
would cast doubt on the credibility of Vitrano's eyewitness account and identification of
the robber.  Hall's proposed testimony was similar to the testimony already presented to
the jury through Mahaffy and Evans.  Thus, in spite of counsel's unsuccessful efforts to
secure Hall's presence, similar testimony from the other witnesses was used to
accomplish the goal of challenging Vitrano's credibility.  In light of this testimony,
Jefferson has shown no prejudice resulting from the unavailability of Hall at trial.

Without a showing of prejudice, counsel's unsuccessful effort to get Hall to trial
does not amount to ineffective assistance.  Counsel was able to present to the jury similar
testimony from two other sources.  The requisite showing of prejudice under Strickland
has not been made.  Thus, denial of relief on this claim was not contrary to, nor an
unreasonable application of, Supreme Court precedent.  Jefferson's claim is without
merit.

(3)   <u>FAILURE TO OBJECT TO THE INSUFFICIENT EVIDENCE AT THE MULTIPLE BILL HEARING</u>

Jefferson alleges that counsel was ineffective for failing to object to the sufficiency of the evidence at the multiple offender hearing.  He alleges that counsel did not challenge the validity of the prior convictions.

The well established federal standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979), applies to sufficiency of the evidence determinations.  <u>Jackson</u> requires the court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt.  <u>Donahue v. Cain</u>, 231 F.3d 1000, 1004 (5th Cir. 2000); <u>Gilley v. Collins</u>, 968 F.2d 465, 467 (5th Cir. 1992); <u>Guzman v. Lensing</u>, 934 F.2d 80, 82 (5th Cir. 1991).

To establish that a defendant is a habitual felony offender under La. Rev. Stat. Ann. § 15:529.1, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony.  <u>State v. Shelton</u>, 621 So.2d 769 (La.1993); <u>State v. Staggers</u>, 2003 WL 22438958 at *5-*6 (La. App. 5th Cir. 2003) (<u>citing</u> State v. Davis, 829 So.2d 554 (La. App. 5th Cir. 2002)); <u>State v. Warfield</u>, 2003 WL 22439586 at *2-*3 (La. App. 2d Cir. 2003).  Certified copies of court records evidencing prior convictions are sufficient to prove the prior conviction.

46

State v. Staggers, 2003 WL 22438958 at *6.  However, independent proof, such as matching fingerprints and other vital information, is required to show that the defendant is the same person identified in those records.  State v. Walker, 795 So.2d 459, 463 (La. App. 5th Cir. 2001), writ denied, 826 So.2d 1115 (La. 2002).

The Louisiana Supreme Court has also held that, upon presentation of sufficient proof of identity and prior convictions, the burden shifts to the defendant to challenge the validity of the underlying convictions:

> If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.

State v. Shelton, 621 So.2d at 779 (footnotes omitted).

In the instant case, the State introduced the testimony of Lieutenant Patricia Adams, a latent fingerprint expert.[79]  Lieutenant Adams testified at the multiple bill

---

[79]St. Rec. Vol. 4 of 6, Transcript of Multiple Bill Hearing, p. 7, 1/9/03.

hearing that the fingerprints on the four certified fingerprint cards from the prior cases matched the prints taken from Jefferson in court on January 9, 2003.[80]  In connection with Lieutenant Adams's testimony, the State submitted certified copies of the conviction packets from the four prior convictions, including arrest registers, bills of information, plea forms and sentencing minutes.[81]  The testimony and evidence was sufficient to support the state court's finding that Jefferson was the same person who had been convicted in the prior cases.

Jefferson does not allege any particular challenge to this evidence which he claims should have been raised by his counsel.  His counsel questioned Lieutenant Adams regarding her analysis of the fingerprints.  She also argued to the court that none of the prior crimes involved weapons and no weapon was presented in the instant case.

The record does not demonstrate any procedural irregularity in the prior cases which would have required further proof from the State under Louisiana law.  The evidence was therefore sufficient for the state trial court to find that the prior convictions were appropriate as a basis to enhance Jefferson's sentence under the habitual offender laws.[82]

---

[80]Id. at p. 10.

[81]Id. at pp. 9-10.

[82]Furthermore, the United States Supreme Court has held that federal habeas corpus relief is not available when a petitioner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody. Lackawanna County District Attorney v. Coss, 532 U.S. 394, 400-401 (2001).

Having shown no basis for counsel to have objected, Jefferson has failed to show that counsel's performance was deficient.  The Supreme Court does not require counsel to make baseless objections.  See Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998), cert. denied, 525 U.S. 1174 (1999) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).  The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Strickland. Jefferson is not entitled to relief on this claim.

(4)   FAILURE TO OBJECT TO THE DENIAL OF A JURY AT THE MULTIPLE BILL HEARING

Jefferson alleges that his counsel was deficient in failing to object to the fact that he was denied a jury at the multiple bill hearing.  For the reasons addressed above, Jefferson had no right to a jury at his multiple bill hearing.  Counsel was not deficient in failing to make an objection not based in law.  See Green, 160 F.3d at 1037.

(5)   DENIAL OF THE RIGHT TO TESTIFY AT TRIAL

Jefferson alleges that his trial counsel denied him the right to testify on his own behalf to present an alibi defense.  The United States Court of Appeals for the Fifth Circuit has held that the decision not to place a defendant on the stand is a strategy which seldom will support a challenge of ineffective assistance of counsel.  See Jones v. Cain, 227 F.3d 228, 231 (5th Cir. 2000) (citing Robison v. Johnson, 151 F.3d 256 (5th Cir. 1998), cert. denied, 526 U.S. 1100 (1999)).  Federal courts have consistently recognized

49

that such tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The record in this case shows that Jefferson had four prior theft-related convictions.  Jefferson concedes that his counsel advised him that he should not testify because of his past criminal record, which would be disclosed to the jury.  This advice was reasonable under the circumstances.  The implication by counsel was that disclosure of Jefferson's criminal past could suggest a propensity to engage in theft.  Had Jefferson taken the stand, the State could have cross-examined him about his criminal past.

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591.  Jefferson has not met this burden.  The state courts' denial of relief was not contrary to, or an unreasonable application of, Supreme Court precedent.  Jefferson is not entitled to relief on this claim.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the petition of Anthony Jefferson for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____5th_____ day of March, 2007.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

51